United States Bankruptcy Court
Southern District of Texas

**ENTERED**

May 04, 2026

Nathan Ochsner, Clerk

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 26-90386 |
| TM36, LLC, *et al.*, | § | |
| Debtors. | § | Jointly Administered |
| | § | CHAPTER 11 |

## ORDER ON COMMAND 247, LLC'S MOTION FOR RELIEF FROM STAY (ECF NO. 36)

This matter is before the Court on Command 247, LLC's motion for relief from the automatic stay.[1]  Command 247 requests the Court to enter an order granting relief from the automatic stay to allow it to sever its counterclaims against the debtors and proceed with the prosecution of its counterclaims and third-party claims in a state court action where two of the debtors are plaintiffs and Command 247 is a defendant and third-party plaintiff.[2]  For the reasons explained below, Command 247's motion is denied.

## BACKGROUND

Debtors, TM36, LLC, StopLoss, LLC ("StopLoss") StopLoss Specialists, LLC ("Specialists"), StopLoss Response Services, LLC, and StopLoss Logistics, LLC, are engaged in the business of emergency response and property restoration services.[3]  StopLoss was created in 2023 as a joint venture between John Lewis's company, StopLoss Specialists, LLC and Scott Butaud's company, Command 247, LLC, with each owning 50% of Stoploss.[4]  StopLoss serves as a holding company and owns 100% of the other debtors.[5]

---

[1] ECF No. 36.

[2] *Id.*

[3] ECF No. 10.

[4] *Id.* ¶¶ 14−15.

[5]*Id.* ¶ 15.

In October 2024, Specialists entered into a restoration contract with Graystreet Management Services LLC to remediate damage to the Renaissance Tower in Dallas, Texas.[6] To finance this project, Specialists entered into a factoring agreement with Insured Advocacy Group, LLC and Insured Advocacy Group II, LLC (collectively "IAG").[7] IAG did not provide financing for the Renaissance Tower project, and without this needed liquidity,[8] Specialists could not complete their work on the Renaissance Tower and Graystreet terminated its agreement with Specialists.[9] This caused significant financial distress for StopLoss, and it contemplated bankruptcy for at least two of its subsidiaries.[10]

In June 2025, Stoploss executed an equity purchase agreement with 431 KW, which agreed to pay $50,000 for a .25% ownership interest in StopLoss and the option to evaluate, prosecute, and fund certain litigation.[11] In July 2025, StopLoss sought and obtained further financing from 431 KW, which agreed to loan up to $6.5 million to Stoploss, beginning with three initial advances of $600,000 each.[12] This contract, entitled the "Convertible Note Agreement," allowed 431 KW to convert all or a portion of outstanding principal into StopLoss membership interests.[13]

In September 2025, StopLoss defaulted on its obligations by failing to pay state and federal income taxes.[14] Upon receiving the notice of default, Lauren Noel a/k/a/ Lauren Segura ("Noel"), a licensed attorney in Louisiana, who formerly served as counsel to StopLoss, sent a letter to 431 KW in her capacity as "Chief of Staff" which accused 431

---

[6] *Id.* ¶ 31.
[7] *Id.* ¶ 32.
[8] The debtors alleged that IAG breached the factoring agreement. This dispute is being litigated before the Court in Adversary Proceeding 26-3072.
[9] ECF No. 10 ¶ 33−34.
[10] ECF No. 83-1, at 6.
[11] *Id.* at 8.
[12] *Id.* at 8-9.
[13] *Id.* at 9.
[14] *Id.*

KW of materially breaching the Convertible Note Agreement.[15]   In October 2025, an appraisal specialist concluded that StopLoss had $0 value and 431 KW converted $1,000 of its debt into a 100% membership interest in StopLoss.[16]

Later in October 2025, 431 KW, LLC, StopLoss, LLC, and StopLoss Specialists, LLC sued Command 247, LLC and Scott Butaud in the Texas Business Court seeking declaratory and injunctive relief.[17] In the complaint, StopLoss alleged that Command 247, Butaud, and Noel had engaged in misconduct and entered into various unauthorized transactions on behalf of StopLoss.[18]   In response, Command 247 and Butaud asserted counterclaims and third-party claims against Specialists, Lewis, 431 KW, and its principal, Paul Black.[19]

On January 20, 2026, certain petitioning creditors commenced an involuntary Chapter 11 case against StopLoss in the United States Bankruptcy Court for the Western District of Louisiana.[20]   On February 13, 2026, the Texas Business Court stayed all proceedings in the state court action.[21]   On March 5, 2026, the debtors commenced their voluntary Chapter 11 proceedings in this district, which are being jointly administered under Case No. 25-90386.[22]   And on March 12, 2026, the Honorable John W. Kolwe transferred the involuntary case to this district.[23]

On March 31, 2026, Command 247 filed the motion for relief from stay currently pending before the Court.[24]   The debtors oppose this

---

[15] *Id.* at 10.
[16] *Id.* at 11.
[17] *See* ECF No. 83-1.
[18] *Id.* at 11– 16.
[19] *See* ECF No. 83-2.
[20] Bankr. W.D. La. Case No. 26-50049, ECF No. 1.
[21] ECF No. 36, at 16–18.
[22] ECF No. 6.
[23] Bankr. W.D. La. Case No. 26-50049, ECF No. 12.
[24] ECF No. 36.

motion.[25]  On April 23, 2026, the Court held a hearing on this matter, admitted documentary evidence, and took the matter under advisement.[26]

## JURISDICTION & VENUE

28 U.S.C. § 1334(a) provides the District Court with jurisdiction over this proceeding. 28 U.S.C. § 157(b)(1) states that "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title." This proceeding has been referred to this Court under General Order 2012-6 (May 24, 2012). This is a core proceeding which the Court can consider under 28 U.S.C. §§ 157(b)(2)(A) and (B). The Court has constitutional authority to enter final orders and judgments. *Stern v. Marshall*, 564 U.S. 462, 486–87 (2011). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

## LEGAL STANDARD

The commencement of a bankruptcy case creates an estate under 11 U.S.C. § 541.  Section 541 provides that the "estate is comprised of all the following property, wherever located and by whomever held: . . . all legal or equitable interests of the debtor in property as of the commencement of the case." *Martinez v. OGA Charters, L.L.C. (In re OGA Charters, L.L.C.)*, 901 F.3d 599, 602 (5th Cir. 2018) (citing 11 U.S.C. § 541(a)–(a)(1)).  The phrase "all legal or equitable interests of the debtor in property" has been construed broadly and includes "rights of action" such as claims based on state or federal law.  *Highland*

---

[25] ECF No. 74.
[26] ECF No. 96.

*Capiral Mgmt. LP v. Chesapeake Energy Corp. (In re Seven Seas Petroleum, Inc.)*, 522 F.3d 575, 584 (5th Cir. 2008).

Section 362 of the Bankruptcy Code provides that the filing of a voluntary bankruptcy petition operates as a stay, applicable to all entities, of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). And "[i]t is fundamental that derivative claims are property of the debtor's estate." *In re Black Elk Energy Offshore Operations, LLC*, No. 15-34287, 2016 WL 4055044, at \*2 (Bankr. S.D. Tex. July 26, 2016) (citing *In re Educators Grp. Health Tr.*, 25 F.3d 1281, 1284 (5th Cir. 1994)).

To determine whether a claim is derivative, courts look to state law to determine whether the debtor could have raised the claim at the commencement of its case. *In re Educators Grp. Health Tr.*, 25 F.3d at 1284. As part of this inquiry, courts examine the nature of the injury for which relief is sought. *Id.* "If a cause of action alleges only indirect harm to a creditor (i.e., an injury which derives from harm to the debtor), and the debtor could have raised a claim for its direct injury under the applicable law, then the cause of action belongs to the estate." *Id.* The Fifth Circuit has instructed that "[i]f the harm to the creditor comes about only because of harm to the debtor, then its injury is derivative, and the claim is property of the estate." *In re Buccaneer Res., L.L.C.*, 912 F.3d 291, 293 (5th Cir. 2019). However, if the cause of action belongs solely to the estate's creditor, then the trustee has no standing to bring the cause of action. *Id.* If the claims belong to the estate, it violates the automatic stay for third parties to exercise control over them. *In re Black Elk Energy*, 2016 WL 4055044, at \*2.

## DISCUSSION

The question presented is whether StopLoss could have raised the causes of action included in Command 247's counterclaims and third-party claims at the commencement of its case. The Court notes that its

decision as to this issue does not pass on the merits of these claims. *In re Seven Seas Petroleum, Inc.*, 522 F.3d at 587−88.   Each of Command 247's claims will be addressed in turn.

## I.    COMMAND 247'S BREACH OF FIDUCIARY DUTY CLAIM AGAINST JOHN LEWIS

In Command 247's counterclaims and third-party petition, it alleges that StopLoss CEO John Lewis owed Command 247 fiduciary duties that he breached by:

> (1) Secretly retaining a valuation firm without notice to or approval from StopLoss's other managers;
>
> (2) Coordinating a valuation process designed to trigger conversion rights under the Convertible Note; and
>
> (3) Providing false and misleading financial information to the valuation firm to depress StopLoss's value.[27]

Command 247 alleges that these breaches by Lewis caused loss of its ownership interest in StopLoss and lost enterprise value.[28]

StopLoss is a Louisiana Limited Liability Company, and under the "internal affairs doctrine," Louisiana law controls. *See In re Uplift RX, LLC*, 667 B.R. 665, 684−85 (Bankr. S.D. Tex. 2024) (quoting *Atherton v. F.D.I.C.*, 519 U.S. 213, 224 (1997)).   Under Louisiana law, any member or manager entrusted with managing a limited liability company "[s]hall be deemed to stand in a fiduciary relationship to the limited liability company and *its members* and shall discharge his duties in good faith, with the diligence, care, judgment, and skill which an ordinary prudent person in a like position would exercise under similar circumstances." LA. STAT. ANN. § 12:1314(A)(1) (emphasis added).

Louisiana courts have applied essentially the same rules to LLCs that they have to corporations and have allowed members of an LLC to

---

[27] ECF No. 83-2, at 8.
[28] *Id.*

sue other members if a breach of the fiduciary duty damages the suing member directly. *Bryan D. Schofield, Inc. v. Susan A. Daigle, Ltd.*, 08-798 (La. App. 3 Cir. 12/10/08), 999 So.2d 311, 315−16. Indeed, in *Schofield*, the Court stated that "a member has a direct right of action against other members individually for a breach of fiduciary duty when such breach is grossly negligent and the damage is to the suing member directly." *Id.* at 315. And the court noted that a member would also have a cause of action if another member "engaged in conduct which demonstrates a greater disregard of the duty of care than gross negligence, including but not limited to intentional tortuous conduct or intentional breach of his duty of loyalty." *Id.* (quoting La. Stat. Ann. § 12:1314(B)).

Here, considering the allegations in Command 247's breach of fiduciary duty claim, StopLoss could have brought this claim against Lewis prepetition. The fiduciary duties that Lewis allegedly breached were owed to both StopLoss and Command 247. LA. STAT. ANN. § 12:1314(A)(1). Command 247's motion for relief from stay states that it "seeks to ***recover damage to the value of its membership interest***, not damage or loss to the debtor StopLoss, LLC or any of its assets or Subsidiaries."[29] However, the diminution in value of Command 247's membership interest is inextricably intertwined with the harm StopLoss suffered.

Command 247 alleges that Lewis's breaches of fiduciary duty caused StopLoss to be valued at $0.[30] Because of this, 431 KW, a StopLoss lender, was able to convert its debt to equity and gain control of 100% of StopLoss, thereby causing Command 247 to lose the value of its membership interest. But for the diminution to StopLoss's value allegedly caused by Lewis, Command 247 would not have suffered any injury. Thus, the harm Command 247 suffered flows from an injury to the debtor and its claim is derivative. *In re Buccaneer Res., L.L.C.*, 912

---

[29] ECF No. 36, at 5-6 (emphasis in original).
[30] ECF No. 83-2, at 7−8.

F.3d at 293.  Command 247's breach of fiduciary duty claim is property of the estate, and the stay applies.

### II.   COMMAND 247'S FRAUD CLAIM AGAINST PAUL BLACK, INDIVIDUALLY AND AS TRUSTEE OF THE PAUL BLACK HERITAGE TRUST ("BLACK TRUST") AND 431 KW LLC

Command 247's second claim alleges that Paul Black, individually and as the Trustee of the Paul Patrick Black Heritage Trust, and 431 KW LLC (collectively the "Black Entities") defrauded StopLoss in connection with the Convertible Note Agreement.[31] Command 247 alleges that Black had neither the intention nor the means to provide StopLoss with the financing and engaged in a fraudulent loan scheme, which caused Command 247 to lose its interest in StopLoss.[32]  Command 247 seeks to recover damages caused by the fraud committed by the Black Entities.

StopLoss undoubtedly could have brought this claim prepetition. The claim alleges that the Black Entities defrauded StopLoss in connection with a contract between 431 KW and StopLoss.  The Convertible Note Agreement and the Secured Convertible Note are governed by Texas law.[33]  The elements of fraud are  (1) a material false representation, (2) that was made with knowledge or recklessness as to its falsity, (3) with the intent to induce reliance, and (4) that the other party "actually and justifiably relied upon," causing him injury. *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.,* 51 S.W.3d 573, 577 (Tex. 2001).

As noted, the Court does not pass on the merits of Command 247's claim, *In re Seven Seas Petroleum, Inc.*, 522 F.2d at 585, however, Command 247's counterclaim and third party claims allege 431 KW and Black made false representations to StopLoss, and that StopLoss relied on these representations in connection with a contract that StopLoss was a party to.[34]  Command 247's fraud claim alleges only indirect harm

---

[31] *Id.* at 9.
[32] *Id.* at 9−10.
[33] ECF No. 83-1, at 54; 85−86.
[34] ECF No. 83-2, at 9−10.

to it derived from StopLoss being defrauded. Command 247's fraud claim is a derivative claim, is property of the estate, and the stay applies.

### III.    RELIEF FROM STAY FOR CAUSE

Alternatively, Command 247 contends that cause exists to lift the stay under 11 U.S.C. § 362(d)(1).[35]  "Cause" is not defined in the Bankruptcy Code, and courts determine whether cause exists using a case-by-case approach. *In re Reitnauer*, 152 F.3d 341, 343 n.4 (5th Cir. 1998).  Courts have broad discretion in deciding whether to lift the stay. *In re Xenon Anesthesia of Tex., PLLC*, 510 B.R. 106, 112 (Bankr. S.D. Tex. 2014).

There is no mandatory standard for finding "cause" in the Fifth Circuit. *In re Choice Enters., Inc.*, No. 14-44982, 2015 WL 1014617, at *5 (Bankr. N.D. Tex. Mar. 4, 2015). However, both parties cite the factors considered in *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990) (citing *In re Curtis*, 40 B.R. 795, 799−800 (Bankr. D. Utah 1984)).[36]

Those factors are: (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the

---

[35] ECF No. 36, at 10−13.
[36] *See* ECF No. 36, at 10−13; ECF No. 74, at 5−7.

parties and the balance of harms. *Id.* Not all factors are relevant in each case. *In re Xenon Anesthesia of Tex.*, 510 B.R. at 112.

In this case, granting relief from stay would only result in partial resolution of the issues. StopLoss is a plaintiff and counterclaim defendant in the state court action, and Command 247 is a defendant and third-party plaintiff. Command 247 seeks to sever its claims against StopLoss and proceed against Lewis, Black, and 431 KW.[37] This would not resolve many of the issues in the dispute. Also, under Rule 38 of the Texas Rules of Civil Procedure, Texas's corollary to Rule 14 of the Federal Rules of Civil Procedure, a defendant may bring a third-party claim "upon a person not a party to the action who is or may be liable to him or to the plaintiff for all or part of the plaintiff's claim against him." Tex. R. Civ. P. 38(a). Command 247 bringing third-party claims necessarily suggests that these third-party defendants may be liable to StopLoss.

Next, the state court action is directly connected to the bankruptcy cases. The action involves numerous stakeholders in this bankruptcy. And, even with the proposed severance, the parties against whom Command 247 wishes to proceed in state court are connected to the bankruptcy cases. Lewis is StopLoss's CEO and 431 KW is both an equity holder and DIP lender and Black controls 431 KW.

The Texas Business Court is specialized tribunal with the necessary expertise to hear these causes of action. The Texas Business Court's purpose is to efficiently address complex business litigation in a manner comparable to or more effective than the business and commercial courts operating in other states. TEX. GOV'T CODE § 25A.0041(a)(1).

However, the interests of judicial economy do not favor granting relief from stay. To sever the claims against StopLoss as Command 247 proposes would result in piecemeal litigation, and it seems possible that StopLoss's participation may be necessary for just adjudication. *See*

---

[37] ECF No. 36, at 7.

TEX. R. CIV. P. 39(a)(2) (requiring joinder of a party if a party claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may impede his ability to protect that interest or leave any of the parties subject to a substantial risk of incurring double, multiple, or inconsistent obligations). And the record does not indicate that the parties are ready for trial in the state court action.

Lastly, the balance of harms does not favor granting relief from the stay. Command 247 has not alleged any harm from the state court litigation being stayed. On the other hand, allowing the state court litigation would divert key constituents' attention away from the bankruptcy and could potentially lead to adjudication of issues that affect StopLoss's interest without them being a party to the action.

## CONCLUSION

For the reasons explained above, Command 247's motion for relief from the automatic stay is denied.

SIGNED 05/03/2026

Alfredo R Pérez
United States Bankruptcy Judge